UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT T. SMITH,                          :
                                          :
        Petitioner,                    :
                                          :  CIVIL NO. 3:CV-04-1642
        v.                             :
                                          :  (CHIEF JUDGE VANASKIE)
PENNSYLVANIA BOARD OF                     :
PROBATION AND PAROLE,                     :
                                          :
        Respondent.                    :

### M E M O R A N D U M

**I.**    **Introduction**

On July 26, 2004, Robert T. Smith, an inmate confined at the Huntingdon State Correctional Institution ("SCI-Huntingdon"), Huntingdon, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Named as Respondent is the Pennsylvania Board of Probation and Parole ("Board").[1] Smith challenges the Board's April 18, 2003 denial of parole on two grounds: (1) he claims the Board impermissibly applied the 1996 amended policies and guidelines of the Parole Act that were not in effect in 1988 at the time of his conviction; and (2) the Board inappropriately considered unspecified "other factors" when

---

[1] The proper respondent in a petition for a writ of habeas corpus is the official having custody of the applicant. See Rule 2 of the Rules Governing Section 2254 Cases In The United States District Courts, 28 U.S.C. foll. § 2254, made applicable to § 2241 petitions by Rule 1(b) thereof. In this case the proper respondent is the Superintendent at SCI-Huntingdon, James L. Grace. Petitioner, however, will not be directed to submit an amendment. Instead, the Court will liberally construe the petition as naming the appropriate respondent.

denying him parole.

Pursuant to this Court's Show Cause Order issued on August 2, 2004, Respondent filed a response to the petition with a supporting brief on September 8, 2004. (Dkt. Entries 5, 9 - 11.) Smith has not filed a traverse. The petition is ripe for consideration, and, for the reasons that follow, will be denied.

**II.      Background**

Smith is currently serving a fifteen (15) to thirty (30) year sentence imposed by the Philadelphia Court of Common Pleas following Smith's conviction for aggravated assault and third degree murder.[2] (Dkt. Entry 11, Ex. A, Declaration of Benjamin A. Martinez ("Martinez Decl."), ¶ 25; Ex. B, Sentence Status Summary.) Smith's minimum sentence expired on July 20, 2003, and his maximum sentence date is July 20, 2018. (Id.)

In addition to his current convictions, Smith's criminal history extends back to 1979, and is marked with prior arrests and/or convictions in New Jersey, New York, Florida and Pennsylvania. The following authorities have lodged detainers against Smith: (1) Delaware County (1988) – criminal conspiracy and altering ID-Weapon; (2) Bureau of Immigrations and Customs Enforcement – Smith, a Jamaican, may be subject to removal proceedings; and (3) the US Marshals – a Racketeer Influenced and Corrupt Organizations Act conviction, for which

---

[2] Smith shot and killed one individual, shot and injured another, and fired shots at two others whom Smith suspected of interfering with his storefront narcotics operation. (Martinez Decl. at ¶ 25.)

Smith was sentenced to life imprisonment without the possibility of parole.  (Martinez Decl. at ¶¶ 27- 28.)

Smith challenges the Board's April 18, 2003 adverse decision on its first review on his current sentence.  (Dkt. Entry 1.)  In its decision the Board noted that it had considered "all matters required pursuant to the parole act of 1941, as amended, 61 P.S. § 331.1 et seq."  (Dkt. Entry 11, Exhibit C, Notice of Board Decision, dated 04/18/03.)  It determined that Smith's "best interests do not justify or require [him] being paroled/reparoled; and, the interests of the Commonwealth will be injured if [he was] paroled/reparoled."  (Id.)  The Board then listed the following individual reasons supporting its decision: Smith's "refusal to accept responsibility for the offense(s) committed; the recommendation of the prosecuting attorney; and his interview with the Hearing Examiner and Board member."  (Id.)  The Board also noted that it considered "other factors deemed pertinent in determining that [Smith] should not be paroled:  [Smith's] refusal to discuss [his] convictions at [his] parole interview indicate [he is] not a suitable candidate for parole."  (Id.)  Although directing that he serve his unexpired maximum sentence, the Board indicated that it "will review Smith for parole again if he files an application for parole." (Martinez Decl. at ¶ 29.)

Smith admits that he did not seek review of the Board's April 2003 decision in Pennsylvania state courts.  He proceeded directly to federal court in filing the instant petition, arguing that it would be futile for him to pursue state court remedies.  (See Dkt. Entry 1, Subject

Matter Jurisdiction.)  Without much elaboration, Smith claims the Board's application of the 1996 amendment of § 331.1 to him "is clearly" a violation of the Ex Post Facto Clause as similarly found in Mickens-Thomas, 321 F.3d 374 (3d Cir. 2003).  He also asserts a Due Process violation as a result of the Board failing to explain its reasoning for deviating from its standard practices when it considered "other factors" in denying parole.  Smith asks that the Board be compelled to "re-evalut[e] his case" or that he be released on parole. (Id., Conclusion.)

**III.        Discussion**

        **A.        Exhaustion of State Court Remedies**

As a threshold matter, a habeas petitioner must either show that the federal constitutional claims asserted in the federal habeas petition have been "fairly presented" to the state courts, or that there is an absence of available state court corrective process, or that circumstances exist rendering the available state court process ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b).[3]  Smith argues that state court remedies are

---

[3] Section 2254(b)(1) of title 28 U.S.C. provides:

> (b)(1) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that --
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

(continued...)

ineffective because the state courts would find that they lack jurisdiction to consider his claims.

Since the filing of the Petition and the Response there have been important federal and state case law developments in the area of when, and if, a Pennsylvania state prisoner must seek state court review of a denial of parole. Specifically, in January of 2005, the Third Circuit Court of Appeals in Defoy v. McCullough, 393 F3d 439, 445 (3d Cir. 2005), held that a state prisoner challenging the denial of parole on constitutional grounds, other than for a violation of the ex post facto clause, was not required to exhaust state court remedies before pursuing federal habeas review. Almost exactly one month later, the Pennsylvania Supreme Court decided Cimaszewski v. Bd. of Prob. & Parole, __ Pa. __, 868 A.2d 416, 427 (2005), which expressly overruled Finnegan v. Bd. of Prob. & Parole, 576 Pa. 59, 838 A.2d 684 (2003), to the extent that the Pennsylvania Court now recognizes that an ex post facto claim may arise from the application of the 1996 amendments to an applicant convicted prior to the enactment of the amendments who can show that they "create[ ] a significant risk of prolonging his incarceration." These recent case developments support the Respondent's contention that exhaustion should not be excused. However, as Smith filed his petition several months prior to

---

³(...continued)

> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

Defoy and Cimaszewski, and given the "considerable jurisprudential confusion" at the time surrounding this issue, it is unreasonable to expect that he could have predicted the Pennsylvania Supreme Court's decision. Defoy v. McCullough, 393 F.3d 439, 446 (3d Cir. 2005)(Weis, J., concurring). Nonetheless, the question of exhaustion need not be resolved as the claims presented by Smith are clearly without merit.[4] See 28 U.S.C. § 2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

### B.   The Merits of Smith's Ex Post Facto Claim

Smith challenges the denial of parole on the ground that the Board violated the Ex Post Facto Clause of the United States Constitution by applying the 1996 amendment to 61 Pa.Stat. §331.1, the statute governing parole standards. "The Ex Post Facto clause of the United States Constitution applies to a statutory or policy change that 'alters the definition of criminal conduct or increases the penalty by which a crime is punishable.'" Mickens-Thomas v. Vaughn, 321 F.3d 374, 383 (3d Cir. 2003)("Mickens-Thomas I"), quoting, California Dept. of

---

[4] Recently, the Supreme Curt ruled that an ex post facto claim of the nature presented here may be pursued in an action under 42 U.S.C. § 1983. Wilkinson v. Dotson, — U.S. —, 2005 WL 516415 (2005). There is no need to exhaust state court remedies before filing a § 1983 action. Although Justice Scalia, in a concurring opinion in which Justice Thomas joined, suggested that habeas corpus would not be available to pursue such a claim, the majority ruling did not resolve this issue. Whether habeas corpus relief is or is not available with respect to the claims advanced by Smith is not presently before this Court. In any event, the issue is academic because the underlying claims lack merit whether brought in habeas or under § 1983.

Corrections v. Morales, 514 U.S. 499, 506 n. 3 (1995).  Ex post facto restrictions apply to parole matters.  See Garner v. Jones, 529 U.S. 244, 250-255 (2000).

In 1996, the Pennsylvania legislature amended the section of its parole law setting forth the public policy statement of the Commonwealth concerning parole.  Specifically, the 1996 legislation decreed that "the board shall first and foremost seek to protect the safety of the public."  61 P.S. § 331.1 (Purdon's 1999).[5]  Before then, section 331.1 made no mention of pubic safety, and in fact declared the public policy of the Commonwealth to be that parole would be a period of rehabilitation of an inmate for his restoration to society.[6]

---

[5] After amendment, section 331.1 reads in full:

> The parole system provides several benefits to the criminal justice system, including the provision of adequate supervision of the offender while protecting the public, the opportunity for the offender to become a useful member of society and the diversion of appropriate offenders from prison.
>
> In providing these benefits to the criminal justice system, *the board shall first and foremost seek to protect the safety of the public.*  In addition to this goal, the board shall address input by crime victims and *assist in the fair administra- tion of justice* by ensuring the custody, control and treatment of paroled offenders.

61 P.S. § 331.1 (Purdon's 1999)(emphasis added).

[6] Formerly, section 331.1 read as follows:

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public

(continued...)

(continued...)

-7-

In Mickens-Thomas I, our Court of Appeals assessed the impact of the amended statute as construed by the Board and applied in that case. The court explained that the essential inquiry was "whether, in practice, the new language has altered the fundament for reviewing parole applications." Id. at 384 (emphasis added). In finding an Ex Post Facto violation in Mickens-Thomas I, the Third Circuit observed that there was "significant evidence that [the Board] acted upon policies that were established after [the petitioner]'s crime and conviction." Id. at 393. The Third Circuit explained:

> [A] parole decision that fails to address any of the criteria mandated by Board policy, such as institutional recommendations, willingness to undergo counseling and educational achievement, and instead utterly ignores all factors counseling in favor of release, falls outside the realm of the legitimate exercise of discretion under the pre-1996 policies. Inference instructs us that the Board inappropriately relied on policies implemented in 1996, rather than the parole policies in place at the time of Thomas's crime and conviction.

Id. at 387.

---

⁶(...continued)
policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Of substantial concern to the Third Circuit was the fact that the evidence demonstrated that the Board interpreted the amended statute to "mandate foremost the consideration of public safety." Id. at 391. "The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function." Id. Notwithstanding this conclusion, the Third Circuit also acknowledged a recent decision of the Pennsylvania Supreme Court, Winklespecht v. Pa. Bd. of Prob. & Parole, 571 Pa. 685, 813 A.2d 688 (2002), which concluded that the amended § 331.1 did not require the Board to place the greatest weight on considerations of public safety. Id. However, the Court of Appeals concluded that the Winklespecht decision, "made *after* the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of the case." Id. (emphasis in original.)

In Mickens-Thomas I, as well as in other rulings issued by the Third Circuit, the appropriate remedy for an Ex Post Facto violation has been to remand the matter to the Board for reconsideration, applying the pre-1996 law.[7] Hart v. Pa. Bd. of Prob. & Parole, 2003 WL 22838381 (3d Cir. Nov. 23, 2003); see also McLaurin v. Larkins, 2003 WL 22147497 (3d Cir. Sept. 18, 2003); Hollawell v. Gillis, 65 Fed. Appx. 809, 2003 WL 1919371, at *8 (3d Cir. April 23, 2003). However, the class of individuals awarded such relief has been limited to those who

---

[7] Following remand in Mickens-Thomas I, the Board again denied parole. Our Court of Appeals found that the Board had exhibited "willful noncompliance, bad faith, and . . . vindictiveness" sufficient to direct the release of the petitioner. Mickens-Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004) ("Mickens-Thomas II").

were denied parole after adoption of the 1996 changes and before Winklespecht clarified the fact that the amendment did not change the administration of the policies. In those cases where parole was denied after Winklespecht, it was evident that the denial of parole was based upon factors that would have resulted in the denial of parole under pre-1996 policies and practices. See Grob v. Pa. Bd. of Prob. & Parole, Civil No. 3:CV-04-0275, slip op. at 6 (M.D. Pa. Oct. 29, 2004)(Nealon, J.); Sphar v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1145, slip op. at 7 (M.D. Pa. Oct. 29, 2004)(Munley, J.); Schaeffer v. Pa. Bd. of Probation & Parole, Civil No. 3:CV-04-1159, slip op. at 8 (M.D. Pa. Oct. 26, 2004)(Munley, J.).

In this case, I agree with Respondent that it was not the Board's application of harsher laws or guidelines that caused the denial of parole. Rather, the Board specifically enumerated multiple significant reasons for denying parole that would have also warranted the denial of parole prior to the 1996 amendments. Initially, I note that Smith's April 18, 2003 parole decision came all most four months after the Pennsylvania Supreme Court had decided Winklespecht, supra. Thus, unlike in the Mickens-Thomas I, the Board had the benefit of Winklespecht prior to conducting Smith's parole review. Additionally, the Board listed a series of significant reasons for denying Smith parole which stress, not public safety issues, but rather Smith's own behavior and the Board's perception of his rehabilitation. See Dkt. Entry 11, Ex. C, Board Decision of April 18, 2003. The Board was obviously dissatisfied with Smith's refusal to accept responsibility for the offenses he committed as well as his refusal to even discuss his

convictions at his parole hearing.  (Id.)  The Board also appropriately considered the

recommendation of the prosecuting attorney.  All of these items are included in § 331.19 as

factors to be considered in parole decisions.[8]  Thus, Smith's argument that the Board

erroneously made public safety a controlling factor in reviewing him for parole is without basis.

Based on the Petitioner's prior criminal history, failure to accept responsibility for the offenses

he has committed, the recommendation of the prosecuting attorney, and his refusal to discuss

his convictions at his parole interview with the Hearing Examiner and Board Member, there is

little doubt that he would have been denied parole regardless fo the 1996 amendments to the

Parole Act.  Smith has not shown a violation of the Ex Post Facto Clause and this claim shall be

dismissed.

        C.        **Merits of Smith's Due Process Claim**

Smith also suggests that the Board violated his due process rights when it

"deviated," without explanation, from established practices by considering "other factors

---

[8] That Section, in relevant part, provides:

> It shall be the duty of the board . . . to consider the nature and
> circumstances of the offense committed, any recommendations
> made by the trial judge and prosecuting attorney, the general
> character and background of the prisoner. . . . The board shall
> further cause the conduct of the person while in prison and his
> physical, mental and behavior condition and history, . . . his
> complete criminal record, as far as the same may be known, to be
> reported and investigated.

deemed pertinent in determining that [Smith] should not be paroled." (Dkt. Entry 1.) The Board's decision, in relevant part, reads:

> Other factors deemed pertinent in determining that you should not be paroled:
>
> Your refusal to discuss your convictions at your parole interview indicate you are not a suitable candidate for parole.

(Dkt. Entry 11, Exhibit C, Notice of Board Decision, dated 04/18/03.) Thus, the Board did articulate the "other factors" that militated against parole. Smith's due process claim plainly lacks merit. Furthermore, contrary to Smith's assertion, as discussed earlier, the Board's decision clearly advised him of the reasons for denying parole. Therefore, this claim will be dismissed.

**IV.**     **Conclusion**

Smith's petition lacks merit, and there is no basis for issuance of a certificate of appealability. An appropriate order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

Dated: June 3, 2005
TIV:pdt

**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT T. SMITH,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>PENNSYLVANIA BOARD OF<br>PROBATION AND PAROLE,<br><br>　　　　　Respondent. | :<br>:<br>:<br>:　CIVIL NO. 3:CV-04-1642<br>:<br>:　(CHIEF JUDGE VANASKIE)<br>:<br>:<br>:<br>:<br>: |

## O R D E R

**NOW**, this 3rd day of **JUNE, 2005**, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1.　The petition for a writ of habeas corpus (Dkt. Entry 1) is **DENIED**.

2.　The Clerk of Court is directed to mark this matter **CLOSED**.

3.　There is no basis for the issuance of a Certificate of Appealability.

　　　　　　　　　　　　　　　　s/ Thomas I. Vanaskie
　　　　　　　　　　　　　　　　Thomas I. Vanaskie, Chief Judge
　　　　　　　　　　　　　　　　Middle District of Pennsylvania

TIV:pdt